1  AMY K. VAN ZANT (SBN 197426)
   avanzant@orrick.com
2  JASON K. YU (SBN 274215)
   jasonyu@orrick.com
3  ORRICK, HERRINGTON & SUTCLIFFE LLP
   1000 Marsh Road
4  Menlo Park, CA  94025-1015
   Telephone:  650-614-7400
5  Facsimile:  650-614-7401

6  KATE JUVINALL (SBN 315659)
   kjuvinall@orrick.com
7  ORRICK, HERRINGTON & SUTCLIFFE LLP
   355 S. Grand Ave., Suite 2700
8  Los Angeles, CA 90071
   Telephone: +1 213 629 2020
9  Facsimile: +1 213 612 2499
   Attorneys for Defendant
10 TALKDESK, INC.

11                  UNITED STATES DISTRICT COURT

12                CENTRAL DISTRICT OF CALIFORNIA

13                      WESTERN DIVISION

14

15 | ANDREW PHAM, an individual, | Case No. 2:22-cv-05325-MCS-JPR; 2:22-cv-05961-MCS-JPR |

16              Plaintiff,

17       v.                        ***REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL***

18 TALKDESK, INC., a Delaware
   corporation,                    **DEFENDANT TALKDESK, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR MONETARY SANCTIONS PURSUANT TO DKT. 126**
19
              Defendant.
20
                                   Date:      September 11, 2023
21 ─────────────────────────       Time:      9:00 a.m.
                                   Ctrm:      7C
22 TALKDESK, INC., a Delaware      Judge:     Honorable Mark C. Scarsi
   corporation,
23
              Plaintiff,
24
         v.
25
   ANDREW PHAM, an individual,
26
              Defendant.
27

28

# TABLE OF CONTENTS

Page No.

I.      INTRODUCTION ................................................................................................ 1

II.     PHAM AND LOBBIN'S MISCONDUCT MERITS MONETARY SANCTIONS ...................................................................................................... 4

    A.    Legal Standard ......................................................................................... 4

    B.    Monetary Sanctions Are Appropriate Here. ........................................... 5

        1.    Monetary Sanctions Are Warranted Given the Litigation and Discovery Abuses Perpetrated by Pham and Lobbin. ....................... 6

        2.    Monetary Sanctions Are Warranted to Adequately Deter Similar Behavior in the Future. ..................................................................... 8

        3.    Monetary Sanctions Are Warranted to Compensate the Significant Harm Done to Talkdesk. ................................................................... 9

        4.    Pham and Lobbin Had Means to Bring This Extortionary Litigation and Should Have the Means to Pay Sanctions. .............................. 9

III.    TALKDESK SHOULD BE AWARDED ITS ATTORNEYS' FEES ............... 9

    A.    The Court Should Award All Of Talkdesk's Fees. ................................. 9

    B.    Motions To Dismiss And Rule 11 Motion. ........................................... 10

    C.    Talkdesk's Fees Are Reasonable. ......................................................... 10

    D.    Orrick's Hourly Rates Are Reasonable. ................................................ 11

        1.    The Billed Rates Reflect Orrick's Usual Market Rates Discounted by 10% Percent. ........................................................................... 13

        2.    Talkdesk Has Paid Orrick's Rates. ............................................... 14

        3.    Comparable and Higher Rates Are Routinely Deemed Reasonable In Other Cases. ........................................................................... 14

    E.    The Hours That Orrick Billed Are Reasonable. ................................... 16

IV.     CONCLUSION ................................................................................................ 18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Am. Apparel, Inc. S'holder Litig.*,
 No. CV 10-06352 MMM, 2014 WL 10212865 (C.D. Cal. July 28,
 2014) ................................................................................................................ 16

*Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*,
 No. 10 Civ. uesdell1853(PGG), 2011 WL 1002439 (S.D.N.Y. Mar.
 16, 2011), *aff'd*, 483 F. App'x 634 (2d Cir. 2012) ............................................ 13

*Amphastar Pharms. Inc. v. Aventis Pharma SA*,
 No. 5:09-cv-00023-SHK, 2020 WL 8680070 (C.D. Cal. Nov. 13,
 2020) ................................................................................................................ 15

*Bayer CropScience AG v. Dow Agrosciences LLC*,
 No. 12-256, 2015 WL 5772219 (D. Del. June 18, 2015) ................................. 13

*Bayer CropScience AG v. Dow AgroSciences LLC*,
 No. 12-256 (RMB/JS), 2015 WL 108415 (D. Del. Jan. 5, 2015) ..................... 13

*Blum v. Stenson*,
 465 U.S. 886 (1984) ......................................................................................... 12

*Cairns v. Franklin Mint Co.*,
 292 F.3d 1139 (9th Cir. 2002) .......................................................................... 10

*Chalmers v. City of Los Angeles*,
 796 F.2d 1205 (9th Cir. 1986) .......................................................................... 12

*Chambers v. NASCO, Inc.*,
 501 U.S. 32 (1991) ........................................................................................ 5, 9

*China Healthways Inst., Inc. v. Hsin Ten Enter. USA, Inc.*,
 No. CV 02-5493 LGB ..................................................................................... 4, 6

*CliniComp Int'l, Inc. v. Cerner Corp.*,
 No. 17CV02479GPCDEB, 2023 WL 2604816 (S.D. Cal. Mar. 22,
 2023) ................................................................................................................ 13

*Facebook, Inc. v. Power Ventures, Inc.*,
   No. 08-CV-05780-LHK, 2017 WL 3394754 (N.D. Cal. Aug. 8,
   2017) ........................................................................................................ 13

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
   CV13–5693 PSG (GJSx), 2017 WL 4685536 (C.D. Cal. May 8,
   2017) ........................................................................................................ 15

*In re Girardi*,
   611 F.3d 1027 (9th Cir. 2010) .................................................................. 6

*Holt v. Kormann*,
   No. SACV 11-01047 .............................................................................. 16

*Human Rights Def. Ctr. v. Cnty. of Napa*,
   No. 20-CV-01296-JCS, 2021 WL 1176640 (N.D. Cal. Mar. 28,
   2021) ........................................................................................................ 10

*Hunt v. Sunny Delight Beverages Co.*,
   No. 8:18-CV-00557-JLS-DFM, 2018 WL 6786265 (C.D. Cal. Dec.
   18, 2018) .................................................................................................... 4

*Imprenta Servs., Inc. v. Karll*,
   No. CV 20-6177-GW-PVCX, 2022 WL 3012820 (C.D. Cal. May
   13, 2022) .................................................................................................... 4

*Int'l Union of Bricklayers & Allied Craftsman Loc. Union No. 20,
   AFL-CIO v. Martin Jaska, Inc.*,
   752 F.2d 1401 (9th Cir. 1985) .................................................................. 5

*Lakim Indus., Inc. v. Linzer Prods. Corp.*,
   No. 2:12-04976 ODW, 2013 WL 1767799 (C.D. Cal. Apr. 24,
   2013) ........................................................................................................ 12

*Lightbourne v. Printroom Inc.*,
   SACV 13-876-JLS (RNBx), 2015 WL 12732457 (C.D. Cal. Dec.
   10, 2015) ....................................................................................... 10, 12, 14

*Maloney v. T3Media, Inc.*,
   No. CV 14-5048-AB, 2015 WL 3879634 (C.D. Cal. May 27, 2015) .........*passim*

*Masimo Corp. v. Tyco Health Care Grp., L.P.*,
   No. CV 02-4770 MRP, 2007 WL 5279897 (C.D. Cal. Nov. 2007) .................. 15

- iii -

*McKibben v. McMahon,*
No. EDCV 14-2171 ................................................................. 15

*Moore v. James H. Matthews & Co.,*
682 F.2d 830 (9th Cir. 1982) ............................................. 12, 13

*Moreno v. City of Sacramento,*
534 F.3d 1106 (9th Cir. 2008) ................................................ 11

*Netlist Inc. v. Samsung Elecs. Co.,*
341 F.R.D. 650 (C.D. Cal. 2022) ............................................ 14

*Olague v. Ford Motor Co.,*
No.: 5:18-cv-02215 MCS, 2021 WL 9095731 (C.D. Cal. June 29,
2021) ........................................................................................ 13

*Orthopaedic Hosp. v. Encore Med., L.P.,*
No. 3:19-cv-00970-LJS-AHG, 2021 WL 5449041 (S.D. Cal. Nov.
19, 2021) .................................................................................. 11

*Truesdell v. S. Cal. Permanente Med. Grp.,*
209 F.R.D. 169 (C.D. Cal. 2002) ................................... 4, 5, 16

*United Steelworkers of Am. v. Phelps Dodge Corp.,*
896 F.2d 403 (9th Cir. 1990) ............................................. 11, 12

*Van Skike v. Dir., Off. of Workers' Comp. Programs,*
557 F.3d 1041 (9th Cir. 2009) ................................................ 12

*Welch v. Metro. Life Ins. Co.,*
480 F.3d 942 (9th Cir. 2007) .................................................. 12

**Statutes**

28 U.S.C.§ 1927 .............................................................................. 6

**Other Authorities**

Rule 11 ..............................................................................*passim*

## I.     **INTRODUCTION**

This Court granted Defendant Talkdesk, Inc.'s ("Talkdesk") Motion for Sanctions on June 11, 2023 and ordered terminating sanctions for Plaintiff Andrew Pham's case.  Dkt. No. 126 at 12.  In awarding sanctions, the Court found that but for Pham and Lobbin's repeated lies about the most basic facts of Pham's Talkdesk legal role and title, Pham's claims would have been dismissed months into the case. Under these circumstances, terminating Pham's case is not really a sanction so much as the result that should have occurred from the start.  The Court thus reserved discretion to reevaluate whether to impose monetary sanctions.  Talkdesk hereby requests that the Court use its inherent authority to impose monetary sanctions against Pham and his counsel, Stephen Lobbin and the SML Avvocati firm (collectively, "Lobbin") in the amount of $1,855,620, or whatever other amount the Court deems appropriate.

The monetary sanctions Talkdesk requests are commensurate with Pham and Lobbin's brazen wrongdoing in repeatedly lying to the Court while engaging in litigation and discovery abuses that needlessly extended the litigation by more than a year and exponentially drove up Talkdesk's costs of defense.  Monetary sanctions are also necessary because Pham and Lobbin have not been chastened by the terminating sanctions.  Even after the Court terminated Pham's case at the June 12 hearing[1], Pham and Lobbin filed a June 20 Errata, purporting to "correct" all of the lies that Talkdesk had identified in the motion the Court had just granted.  But instead of withdrawing the numerous misrepresentations to the Court, Pham and Lobbin persisted in arguing that he was primarily a business executive whose legal work was "mostly" limited to patent matters.  Dkt. 123.

Monetary sanctions are also necessary because the lies that justified the terminating sanctions are just a sliver of the gross misconduct by Pham and Lobbin

[1] *Pham v. TD* has been administratively closed for all purposes except the filing of this motion.

- 1 -

1    throughout the case.  Pham and Lobbin dragged out the discovery process,

2    repeatedly lying about whether they had searched for relevant documents, whether

3    certain documents still exist, and whether Pham had deleted relevant information

4    while the litigation was pending.  Talkdesk had to file no fewer than five discovery

5    motions (each of which was granted) to get what was ultimately a still massively

6    incomplete production by Pham.  Pham and Lobbin's discovery misconduct is so

7    extreme that back in May 2023, Magistrate Rosenbluth appointed a forensic expert

8    to try to reconstruct what information Pham has, what he has destroyed, and where

9    relevant documents might still exist.  Yet Pham and Lobbin have stymied the

10   expert's work, which has yet to result in a report some three months later.

11        Moreover, Pham and Lobbin have not been chastened by the terminating

12   sanctions.  Before filing the present litigation, Lobbin wrote to Talkdesk

13   threatening that Pham would disrupt a potential future Talkdesk IPO by bringing

14   false claims timed to cause investor concerns unless Talkdesk would pay him $7

15   million he was not owed.  But even now that Pham's phony claims have been

16   dismissed, Pham and Lobbin are still making threats, with Lobbin recently warning

17   that Pham might take his fake legal claims "public" (leveraging and

18   misrepresenting Talkdesk privileged information that he gained in his role as its

19   lawyer) by going to the Wall Street Journal or other publications unless Talkdesk

20   accepted a settlement on Pham's terms.

21        Meanwhile, Talkdesk has been forced to defend itself and its reputation

22   against fake claims brought by its own former in-house lawyer and fiduciary.  Pham

23   and Lobbin's scheme is not limited to suing Talkdesk on Pham's trumped up

24   employment claims but instead involves a sprawling web of some *five cases* that

25   Pham and Lobbin have had a hand in bringing against Talkdesk.  That includes the

26   still pending case filed by Pham's current employer, Engineer, where he serves as

27   General Counsel.  That case has been stalled out following the Los Angeles

28   Superior Court's disqualification of Pham and Lobbin and order barring Pham and

TALKDESK'S MPA ISO MOTION FOR MONETARY
SANCTIONS
CASE NO. 2:22-CV-05325-MCS-JPR

Lobbin together with Engineer's CEO and COO from having any further involvement in the case, but it is still pending and Talkdesk is still incurring fees.

Pham and Lobbin's wrongdoing is truly singular in both brazenness and scope. The facts described above do not even scratch the surface in terms of Pham and Lobbin's misconduct against Talkdesk (and against another former Pham employer/client, Verint Systems). None of this is normal. Some of it might even be criminal. And all of it has to stop.

Monetary sanctions are the only way to force Pham and Lobbin to change. We know that money "talks" and Pham and Lobbin listen because Pham and Lobbin told the court that Pham would have to dismiss his entire case if Talkdesk were allowed to file its sanctions motion. The Court struggled to understand why Pham would presume he would lose Talkdesk's motion and be forced to pay Talkdesk's attorneys' fees if Pham had a legitimate case. The answer is, he did not have a legitimate case and he was afraid the piper was about to come calling. The piper is here.

Talkdesk respectfully requests that the Court impose a monetary sanction of $1,855,620, jointly and severally, on Pham and Lobbin. Only being held responsible for Talkdesk's fees in defending this case is sufficient to get Pham and Lobbin's attention. They are successful lawyers with multiple homes and a portfolio of stock options (at least for Pham). Pham has jetted all over the world during the course of the last year, submitting declarations from Vietnam and vacationing in Dubai. Talkdesk has provided evidence that its $1,855,620 in fees were reasonable and necessary in defending against Pham and Lobbin's broad shakedown scheme. If the Court believes that a lesser amount is indicated, Talkdesk has also submitted detailed time entries and support for the costs of preparing its three motions to dismiss, supplemental briefing on its motion to dismiss Pham's SAC, and in preparing its motion for sanctions.

For all of the foregoing reasons, the Court should rely on its inherent

authority to issue monetary sanctions that will both punish Pham and Lobbin for their intentional wrongdoing and at least partially compensate Talkdesk for what it took to protect itself from being dragged through the mud.  Talkdesk respectfully requests that the Court sanction Pham and Lobbin, jointly and severally, in the amount of not less than $1,855,620 million or in whatever other amount the Court deems proper given these extraordinary and disturbing facts.

## II.    PHAM AND LOBBIN'S MISCONDUCT MERITS MONETARY SANCTIONS

The Court should aware monetary sanctions jointly against Pham and Lobbin.  Such sanctions are warranted given the egregious conduct at issue and the harm that the conduct has caused.

### A.    Legal Standard

When determining whether to award monetary sanctions, and the amount of sanctions to award, the Court can consider a number of factors and purposes. Indeed, "[t]he Court may award attorneys' fees when the interests of justice so require." *China Healthways Inst., Inc. v. Hsin Ten Enter. USA, Inc.*, No. CV 02-5493 LGB JWJX, 2003 WL 21982477, at *14 (C.D. Cal. Mar. 12, 2003).

In many cases, for example, Courts will award fees to compensate the party prejudiced by the bad faith conduct. *Id.* (awarding monetary sanctions for the amount of expenses incurred as a result of party's bad faith filing); *see also Hunt v. Sunny Delight Beverages Co.*, No. 8:18-CV-00557-JLS-DFM, 2018 WL 6786265, at *5 (C.D. Cal. Dec. 18, 2018) (ordering attorneys' fees for the preparation of motions directly traceable to the Rule 11 violation); *Imprenta Servs., Inc. v. Karll*, No. CV 20-6177-GW-PVCX, 2022 WL 3012820 (C.D. Cal. May 13, 2022) (ordering attorneys' fees for work incurred because of offending attorney's false statements and baseless arguments).

Courts will also often award fees in order to punish and discourage the offending party from repeating its misconduct. *See Truesdell v. S. Cal. Permanente*

- 4 -

*Med. Grp.*, 209 F.R.D. 169, 175 (C.D. Cal. 2002) ("Thus, in addition to requiring that any fees be a direct result of the offending conduct, the court must consider the deterrent effect of any fee award.").

In some cases, this may warrant fees for the entire litigation. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 42 n.8 (1991) ("In the case of Rule 11, however, a violation could conceivably warrant an imposition of fees covering the entire litigation, if, for example, a complaint or answer was filed in violation of the Rule."); *Truesdell*, 209 F.R.D. at 176 (sanctioning plaintiff's counsel sanctioned based on the entire conduct in first filing the legally deficient complaint).

Generally, attorneys and their clients can be held jointly and severally liable for conduct that violates Rule 11. *Int'l Union of Bricklayers & Allied Craftsman Loc. Union No. 20, AFL-CIO v. Martin Jaska, Inc.*, 752 F.2d 1401, 1406-07 (9th Cir. 1985) (sanctioning party and party's counsel jointly and severally for fees incurred by defending frivolous appeal).

### B.   Monetary Sanctions Are Appropriate Here.

Monetary sanctions are appropriate here both as a deterrent for the egregious behavior at issue and to compensate for the significant harm that Talkdesk has incurred.  As discussed herein, Lobbin and Pham knowingly launched a campaign of false and unsupported claims against Talkdesk as part of a scheme to extort Talkdesk for a settlement that they were not entitled to.  The underlying purpose of that campaign was not to succeed on meritorious claims, but to publicly harass and smear Talkdesk and increase litigation costs until Talkdesk had no option but to submit to Pham's extortionary demands.

Pham and Lobbin's plan worked in the sense that Talkdesk has been forced to spend millions to defend itself and assert its rights.  And the only consequence and "deterrent" thus far is the dismissal of the claims that never had any merit in the first place.  Indeed, as the Court acknowledged in its sanctions order, "Mr. Pham's only remaining claims depended entirely on his intentional misrepresentation to

4162-1873-0568

survive" and, thus, would have just been dismissed on a motion to dismiss anyway. ECF No. 126 at 12.

### 1.   <u>Monetary Sanctions Are Warranted Given the Litigation and Discovery Abuses Perpetrated by Pham and Lobbin.</u>

Monetary sanctions are warranted owing to the abuse of the court system to further Pham's and Lobbin's extortionary scheme.  The conduct was not only in bad faith, but it unreasonably and vexatiously multiplied the proceedings in this case, warranting a separate award of sanctions under 28 U.S.C.§ 1927.  *China Healthways Inst., Inc.*, 2003 WL 21982477, at *13 (awarding fees and finding sanctions warranted under section 1927 based on knowingly frivolous opposition to motion to dismiss, which constituted bad faith); *In re Girardi*, 611 F.3d 1027, 1060 (9th Cir. 2010) (acknowledging that an attorney who "unreasonably and vexatiously" multiplies proceedings can be held personally liable for excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct).

To start, Pham larded up his pleadings with sensational and confidential allegations (many of which were completely fabricated) and specifically identified Talkdesk executives by name.  *See, e.g.*, ECF No. 59 at ¶ 13.  This was done to embarrass Talkdesk and not to support legitimate claims, which is why Pham and Lobbin repeatedly filed their pleadings and briefs publicly even though the Court had ordered them at the outset of the litigation to file anything that might be privileged under seal.

Pham and Lobbin also unnecessarily duplicated the proceedings in this case as a means of dragging out their meritless claims.  For example, Pham forced Talkdesk to file three separate motions to dismiss his complaints.  ECF Nos. 26, 39, 59.  Each time, Talkdesk and/or the Court provided specific guidance regarding the problems with Mr. Pham's pleadings, and each time he amended without addressing the issues or by addressing them with false allegations.  In doing so, Pham and Lobbin extended the life of the false claims and significantly increased

- 6 -

1    the cost of the litigation for Talkdesk.

2          Similarly, Pham and Lobbin filed a number of completely unnecessary and

3    unprecedented documents including an *ex parte* application to preclude Talkdesk

4    from even filing its motion for sanctions (ECF No. 87) and an untimely errata that

5    did not actually correct the key misstatements that lead to the termination of Pham's

6    case (ECF No. 123).  Pham and Lobbin also filed a meritless motion to disqualify

7    Orrick (ECF No. 64) as retribution for a motion to disqualify Lobbin and Pham that

8    Talkdesk filed (and won) in a separate action with Pham's latest employer,

9    Engineer.

10         Pham and Lobbin unnecessarily duplicated proceedings and increased costs

11   through various discovery abuses.  In response to straightforward and reasonable

12   document requests and interrogatories, Mr. Pham agreed to produce responsive

13   documents but then refused to perform a diligent search for those documents over

14   and over again.  During discovery, Pham and Lobbin repeatedly represented that

15   they had searched for and produced all responsive documents even though those

16   representations were clearly false.  *See* ECF No. 66 (Discovery Motion) and ECF

17   No. 79 (Order Granting Motion to Compel) at 1 and 5 (Ordering Mr. Pham to

18   provide a detailed declaration about his discovery efforts given evidence of missing

19   documents).  Indeed, Talkdesk was forced to subpoena Google for metadata records

20   showing that additional responsive documents existed in Mr. Pham's personal

21   email account and then file multiple motions to get Mr. Pham to produce those

22   documents.  *See id.*  Even after the Court ordered Mr. Pham to produce the

23   documents, Talkdesk had to file an *ex parte* application to stop Mr. Pham from

24   deleting documents and appoint a forensic examiner to separately and

25   independently collect the documents and assess how many had been deleted.  *See*

26   ECF No. 98 (Ex Parte Application to Stop Deletion) and ECF No. 104 (Order

27   Granting Talkdesk's Ex Parte and Appointing Third Party Forensic Expert).  But

28   that forensic examination has been stymied because Mr. Pham has refused to

TALKDESK'S MPA ISO MOTION FOR MONETARY SANCTIONS
CASE NO. 2:22-CV-05325-MCS-JPR

4162-1873-0568

provide the expert with access to his Engineer emails or basic metadata that should have been produced with documents turned over months ago.

### 2.   Monetary Sanctions Are Warranted to Adequately Deter Similar Behavior in the Future.

Monetary sanctions are also needed to deter Pham, Lobbin, and others from engaging in similar extortionary schemes.  Indeed, Pham and Lobbin do not appear to have learned anything as they continue to misrepresent the nature of Mr. Pham's role at Talkdesk.  *See* ECF No. 123 (Errata).  Indeed, during a recent conferral, Lobbin communicated that Pham may circumvent the Court completely and go directly to the press with his false claims.  Van Zant Decl., ¶ 33.  And, as noted above, Pham and Lobbin continue to refuse to abide by the Court's discovery orders including by refusing to provide the forensic expert with the materials he needs to complete his report.

More importantly, simply terminating the action—which should have been terminated on a motion to dismiss anyway—does not serve as a deterrent or a punishment because the case would have been dismissed (or not even filed) if Pham and Lobbin had not violated their duties to the Court.  In other words, if the only consequence for prosecuting an extortionary claim based on knowingly false allegations is the dismissal of that already non-meritorious claim (assuming the defendant has the resources to fight such a claim) then there really is no disincentive for plaintiffs like Lobbin and Pham to at least attempt to file those claims.  Best case scenario they extort a settlement; worst case scenario they lose a case that never had any merit to begin with.

Together, Pham and Lobbin have practiced law for nearly 60 years and have every reason to know better than to do what they have done.  But they nonetheless believed this conduct was appropriate and nothing has been done to deter them from that belief.

///

### 3. Monetary Sanctions Are Warranted to Compensate the Significant Harm Done to Talkdesk.

Monetary sanctions are also necessary to adequately compensate Talkdesk, who has been left holding a $1,855,620 invoice for legal fees defending its rights against Pham in these consolidated cases. As noted above, Lobbin and Pham's tactics unnecessarily expanded the case and caused these fees through duplicative motions to dismiss and discovery proceedings. In addition, Talkdesk was required to subpoena third parties (e.g., Google, the State Bar of Wisconsin, the State Bar of California, and several of Pham's former lawyers) to obtain the evidence necessary to disprove Pham and Lobbin's false statements in discovery and in the litigation.

### 4. Pham and Lobbin Had Means to Bring This Extortionary Litigation and Should Have the Means to Pay Sanctions.

To the extent the Court is inclined to consider their resources, Pham and Lobbin have ample resources to account for the harm they have inflicted. Pham is a self-reported successful lawyer and businessman with a six-figure salary, two homes in Northern California, and owns all kinds of stock shares, including in Talkdesk. Van Zant Decl., Exs. 4 (Pham Dep. Tr.) and 5 (Pham Talkdesk Offer Letter). Indeed, during this very litigation, the parties had to schedule Mr. Pham's deposition and the forensic examination around Mr. Pham's worldwide travels to Dubai and Vietnam.

Lobbin is also a successful attorney, former partner at Foley & Lardner and owns his own firm and multiple properties. *Id.*, Exs. 6-7 (Lobbin Background); 8-9 (Lobbin property ownership summary).

## III. TALKDESK SHOULD BE AWARDED ITS ATTORNEYS' FEES

### A. The Court Should Award All Of Talkdesk's Fees.

Given the extreme and coordinated misbehavior, Pham and Lobbin's resources, and the actual harm to Talkdesk, Talkdesk requests the $1,855,620 it has incurred in this case, which was predicated on Pham's false statements from the start. Van Zant Decl., ¶ 16; s*ee Chambers*, 501 U.S. at 42 n.8 ("In the case of Rule

TALKDESK'S MPA ISO MOTION FOR MONETARY SANCTIONS
CASE NO. 2:22-CV-05325-MCS-JPR

11, however, a violation could conceivably warrant an imposition of fees covering the entire litigation, if, for example, a complaint or answer was filed in violation of the Rule.").

Talkdesk used the same core team across the various matters Pham had a hand in bringing against Talkdesk in order to conserve resources and ensure that everyone stayed aware of the relevant facts across all the matters.  In addition, the Pham/Talkdesk cases have been coordinated for all purposes since Nov. 2022.  For these reasons, it is difficult to sever out costs for this case only, but we know they total $1,855,620.  Van Zant Decl., ¶ 16; Middler Decl., ¶ 9.

**B.  Motions To Dismiss And Rule 11 Motion.**

To the extent the Court is inclined to parse those fees and award fees associated with Talkdesk's motions to dismiss and Motion for Sanctions, however, Talkdesk has carefully accounted for that time in the attached exhibits and discussion below.  This includes fees for Talkdesk's three Motions to Dismiss; the supplemental briefing on the Motion to Dismiss Pham's Second Amended Complaint; Talkdesk's Motion for Sanctions; and Pham's Ex Parte Application to Strike Talkdesk's Unfiled Sanctions Motion.

**C.  Talkdesk's Fees Are Reasonable.**

Courts routinely employ the lodestar method to determine the reasonableness of an attorneys' fee award.  *See, e.g.*, *Human Rights Def. Ctr. v. Cnty. of Napa*, No. 20-CV-01296-JCS, 2021 WL 1176640 at *8 (N.D. Cal. Mar. 28, 2021); *Lightbourne v. Printroom Inc.*, SACV 13-876-JLS (RNBx), 2015 WL 12732457, at *2 (C.D. Cal. Dec. 10, 2015); *Maloney v. T3Media, Inc.*, No. CV 14-5048-AB (VBKx), 2015 WL 3879634, at *3 (C.D. Cal. May 27, 2015).

The presumptive lodestar figure is determined by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1157 (9th Cir. 2002).  Once the party seeking fees presents such a figure, the burden shifts to the opposing party to prove the

unreasonableness of the fee award.  *See Maloney*, 2015 WL 3879634 at *4.

"[H]ours actually expended in the litigation are not to be disallowed without a

supporting rationale."  *Orthopaedic Hosp. v. Encore Med., L.P.*, No. 3:19-cv-

00970-LJS-AHG, 2021 WL 5449041, at *12–14 (S.D. Cal. Nov. 19, 2021) (citing

*United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir.

1990)).  "If opposing counsel cannot come up with specific reasons for reducing the

fee request that the district court finds persuasive, it should normally grant the

award in full, or with no more than a haircut."  *Maloney*, 2015 WL 3879634 at *4

(citing *Moreno v. City of Sacramento*, 534 F.3d 1106, 1116 (9th Cir. 2008)).  "[A]

fee award is not unreasonable simply because it involves a lot of money.  The

operative question is not the dollar amount, but whether the rates charged and the

hours spent are reasonable in light of the totality of the litigation."  *Id.* at *10.

### D.    Orrick's Hourly Rates Are Reasonable.

Orrick's undiscounted hourly rates in 2022-2023 range from $1,030 to

$1,750 for partners; $610 to $1,025 for associates; and $235 to $530 for paralegals.

AVZ Decl. ¶ 8.  Orrick's hourly rates are informed by the market and the rates of

peer firms.  *Id.*  Here, however, Talkdesk had the benefit of a negotiated ██████

discount off of Orrick's standard billing rates, which significantly reduced the rates

that Talkdesk paid.  *Id.* ¶ 9.  Specifically, the rates of the timekeepers assigned to

this matter for which Talkdesk seeks reimbursement are as follows:

| Timekeeper | Position | Years of Practice | Undiscounted Rates (2022/2023) | Discounted Rate (2022/2023) |
|---|---|---|---|---|
| Amy Van Zant | Partner | 25 | $1,200/$1,290 | ████████ |
| Jason Yu | Partner | 14 | $1,055/$1,140 | ████████ |
| Daniel Justice | Senior Associate | 10 | NA/$1,075 | NA███████ |
| Kate Juvinall | Senior Associate | 10 | $950/$1,050 | ██████ |

| | Managing Associate | 6 | NA/$985 | NA/█████ |
|---|---|---|---|---|
| David Jonas | | | | |
| Amanda Schwartz | Associate | 2 | $610/$725 | ███████ |
| Ryan Lind | Associate | 2 | $610/$725 | ███████ |
| James Calderon | Senior Paralegal | 24 | $480/$520 | ███████ |

AVZ Decl. ¶ 29.

In determining reasonable rates for the lodestar method, courts consider the prevailing market rates for similar services by "attorneys of comparable skill, experience, and reputation" in the relevant community, which is the forum in which the district court sits. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986); *Van Skike v. Dir., Off. of Workers' Comp. Programs*, 557 F.3d 1041, 1046 (9th Cir. 2009) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). The fact that a billing rate is the usual rate the attorney charges is evidence that the rate is comparable to market rates. *See, e.g.*, *Moore v. James H. Matthews & Co.*, 682 F.2d 830, 40 (9th Cir. 1982); *Maloney*, 2015 WL 3879634 at * 5. In determining the reasonableness of hourly rates, courts will also consider whether the attorney charged discounted rates and/or whether the clients actually paid the rates sought. *See Lightbourne*, 2015 WL 12732457, at *3; *Maloney*, 2015 WL 3879634 at *5. Courts may also determine the reasonableness of attorneys' hourly rates through case law reflecting that comparable rates were deemed to be reasonable. *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007) (citing *United Steelworkers*, 896 F.2d at 407 ("[R]ate determinations in other cases . . . are satisfactory evidence of the prevailing market rate.")); *see also Lakim Indus., Inc. v. Linzer Prods. Corp.*, No. 2:12-04976 ODW, 2013 WL 1767799, at *8 (C.D. Cal. Apr. 24, 2013) (case law can demonstrate that a firm's rates are reasonable).

Here, each of these factors evidences the reasonableness of Orrick's hourly rates in connection with this complex litigation.

1. **The Billed Rates Reflect Orrick's Usual Market Rates Discounted by ███ Percent.**

Orrick is an international law firm with deep expertise and established success in complex commercial disputes and litigation. *See* AVZ Decl. ¶¶ 6-7. Orrick sets hourly rates for its litigators that are informed by prevailing market rates and the rates of comparable peer firms. AVZ Decl. ¶ 8; *see also Maloney*, 2015 WL 3879634, at *5 (finding 'the actual rate that [the attorney] can command in the market is itself highly relevant proof of the prevailing community rate"); *Moore*, 682 F.2d at 840 ("Unless counsel is working outside his or her normal area of practice, the billing-rate multiplier is, for practical reasons, usually counsel's normal billing rate."). Courts have routinely awarded attorneys' fees to Orrick clients at Orrick's rates,[2] recognizing that the firm's rates are reasonable in light of its lawyers' skills, reputation, experience, and the work performed. *See Olague v. Ford Motor Co.*, No.: 5:18-cv-02215 MCS (KKx), 2021 WL 9095731, at *2 (C.D. Cal. June 29, 2021) ("The Court can also rely on other court decisions analyzing the

---

[2] *See, e.g., CliniComp Int'l, Inc. v. Cerner Corp.*, No. 17CV02479GPCDEB, 2023 WL 2604816, at *5 (S.D. Cal. Mar. 22, 2023) (finding Orrick's rates reasonable and granting full attorneys' fees without any type of "haircut"); *Facebook, Inc. v. Power Ventures, Inc.*, No. 08-CV-05780-LHK, 2017 WL 3394754, at *7 (N.D. Cal. Aug. 8, 2017) (approving Orrick's rates as reasonable where the prevailing market rate for partners ranged from $470 to $1,200 per hour; $275 to $800 for associates; and $190 to $430 for paralegals); *see also Bayer CropScience AG v. Dow AgroSciences LLC*, No. 12-256 (RMB/JS), 2015 WL 108415, at *9 (D. Del. Jan. 5, 2015) (awarding nearly $6 million in fees in light of "the ferocity of this litigation"), *report and recommendation adopted in part*, No. 12-256, 2015 WL 1197436 (D. Del. Mar. 13, 2015), *aff'd*, 851 F.3d 1302 (Fed. Cir. 2017); *Bayer CropScience AG v. Dow Agrosciences LLC*, No. 12-256, 2015 WL 5772219, at *3 (D. Del. June 18, 2015) (confirming award of nearly $6 million in fees because Orrick's "conduct was more than reasonable"); *Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*, No. 10 Civ. uesdell1853(PGG), 2011 WL 1002439, at *5 (S.D.N.Y. Mar. 16, 2011) (finding Orrick's rates reasonable), *aff'd*, 483 F. App'x 634 (2d Cir. 2012).

4162-1873-0568

1  same attorneys' rates to determine whether the prevailing party requests a

2  reasonable rate.").

3      Nevertheless, Orrick provided Talkdesk the benefit of discounts on the firm's

4  standard billing rates—specifically, a ███ discount off all timekeeper rates.  *See*

5  AVZ Decl. ¶ 9; *see also Lightbourne*, 2015 WL 12734257, at *3 (finding hourly

6  rates reasonable because, among other things, the client received a 15% percent

7  discount from the law firm's standard rates).  In total, this discount and time write-

8  offs resulted in a ████████ discount to Talkdesk for time billed between August

9  1, 2022 and June 22, 2023 for the filings that are the subject of this Motion.  *See*

10  AVZ Decl. ¶ 17.  Orrick's discounted rates are reasonable.

11              **2.    Talkdesk Has Paid Orrick's Rates.**

12      The reasonableness of Orrick's rates is further supported by the fact that

13  Talkdesk has paid, and continues to pay, the invoices reflecting Orrick's effective

14  billing rates.  *See* Middler Decl. ¶ 8; *see also Maloney*, 2015 WL 3879634, at *5

15  ("[T]he fact that Defendant paid the rates for which they now seek reimbursement"

16  evidences the reasonableness of the rates charged.).  Indeed, Talkdesk has retained

17  Orrick on over 70 matters in the last eight years.  *See* Middler Decl. ¶ 6.  Ms. Van

18  Zant herself has worked for Talkdesk for the last 3 years, and Ms. Van Zant has

19  worked with Talkdesk's current Chief Legal Officer, David Middler, for over 20

20  years.  *See* AVZ Decl. ¶¶ 3-4.  Talkdesk retained Orrick for these matters because

21  the firm has a proven track record of being able to resolve Talkdesk's most

22  complex matters more efficiently and inexpensively than the dozens of other law

23  firms the company uses.  *See* Middler Decl. ¶ 7.

24              **3.    Comparable and Higher Rates Are Routinely Deemed
25                      Reasonable In Other Cases.**

26      Orrick's negotiated billing rates are in-line with the rates that other firms

27  have charged and been awarded in complex litigation in the relevant community.

28  Orrick's fees are consistent with those of national law firms in similarly complex

litigation, that have been approved in the Central District of California.  *See, e.g.*, *Netlist Inc. v. Samsung Elecs. Co.*, 341 F.R.D. 650, 675-76 (C.D. Cal. 2022) ("[T]he Court finds that Netlist has met its burden in proving that partner hourly rates between \$1,160 to \$1,370 are reasonable. . . .  With respect to the other Gibson Dunn associates, the Court finds that Netlist has met its burden in proving that hourly rates ranging from \$965 to \$1,060 are reasonable.") *McKibben v. McMahon*, No. EDCV 14-2171 JGB (SPx), 2019 WL 1109683, at \*14 (C.D. Cal. Feb. 28, 2019) (approving ranges as reasonable where "attorneys practicing civil rights litigation with 26-49 years of experience bill adjusted lodestar rates of \$887-\$1230 per hour; attorneys practicing civil rights litigation with 23-33 years of experienced bill adjusted lodestar rates of \$738-\$1220 per hour"); *Masimo Corp. v. Tyco Health Care Grp., L.P.*, No. CV 02-4770 MRP (AJWx), 2007 WL 5279897, at \*7 (C.D. Cal. Nov. 2007) ("His average rate of about \$1000 per hour is not so far above the range for other lawyers in the community (and other lawyers in this case) that it outweighs these considerations.").

Moreover, Wolters Kluwer's ELM Solutions Real Rate Report lists the average billing rates for lawyers at firms in Southern California and has been countenanced by this Court.  *See, e.g.*, *Amphastar Pharms. Inc. v. Aventis Pharma SA*, No. 5:09-cv-00023-SHK, 2020 WL 8680070, at \*25 (C.D. Cal. Nov. 13, 2020); *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, CV13–5693 PSG (GJSx), 2017 WL 4685536, at \*8 (C.D. Cal. May 8, 2017) ("The Court turns to the Real Rate Report as a useful guidepost to assess the reasonableness of these hourly rates in the Central District.").  The report shows that the 2022 rates paid by Talkdesk in this matter were within the ranges of partner and associate billing rates for attorneys at law firms in California.  AVZ Decl. ¶ 32, Ex. 3.  And since billing rates trend upward over time, the 2022 ELM Report likely reflects lower numbers than 2023 rates.

The hourly rates charged in this case are further justified by the team's

credentials and the favorable result—terminating sanctions—achieved in this case. Dkt. Nos. 117, 126.  Accordingly, the Court should recognize Orrick's rates as reasonable.

## E.     The Hours That Orrick Billed Are Reasonable.[3]

The core Orrick team for this case was primarily limited to two partners, each with a different role; two senior associates, each with a different role; a mid-level associate; two junior associates; and one paralegal.  *See* AVZ Decl. ¶¶ 19-28.  The team was staffed this way to adequately cover the multiple cases with related facts as to Pham and Engineer.  *Id.* ¶ 19.  Given the significant motion practice in this case, it is wholly reasonable for Talkdesk "to staff the case with several attorneys." *In re Am. Apparel, Inc. S'holder Litig.*, No. CV 10-06352 MMM (JCGx), 2014 WL 10212865, at *26 (C.D. Cal. July 28, 2014); *see also Holt v. Kormann*, No. SACV 11-01047 DOC (MLGx), 2012 WL 5829864, at *6 (C.D. Cal. Nov. 15, 2012) ("[T]ypically, an attorney's sworn testimony that, in fact, he took the time claimed . . . is evidence of considerable weight on the issue of the time required.") (internal quotation marks omitted).

Furthermore, Talkdesk has prepared detailed charts reflecting its time entries should the Court decide to award monetary sanctions based only on those filings that directly resulted from Pham's misrepresentations that resulted in the filing of three motions to dismiss, the sanctions motion, and the related supplemental and *ex parte* briefing.  *See Truesdell*, 209 F.R.D. at 176 (awarding fees for plaintiff's "entire course of conduct in first filing" the complaint in the face of defense counsel's evidence of the futility of his claims).  Talkdesk submits that the work for the following categories were attributable to Pham's sanctioned misrepresentations

---

[3] As required by this Court's Civil Standing Order, Talkdesk attaches two tables summarizing the hours worked by each attorney, one organized by task and the other by attorney.  AVZ Decl. ¶ 31, Ex. 2.

TALKDESK'S MPA ISO MOTION FOR MONETARY SANCTIONS
CASE NO. 2:22-cv-05325-MCS-JPR

to the Court: (a) Talkdesk's Motion to Dismiss Pham's Complaint; (b) Talkdesk's Motion to Dismiss Pham's First Amended Complaint; (c) Talkdesk's Motion to Dismiss Pham's Second Amended Complaint; (d) Talkdesk's Supplemental Briefing re Motion to Dismiss Pham's Second Amended Complaint; (e) Talkdesk's Rule 11 Motion for Sanctions; and (f) opposing Pham's Ex Parte Application to Strike Threatened Rule 11 Motion.  Talkdesk seeks attorneys' fees for these tasks based on this Court ordering terminating sanctions.  *See* Dkt. No. 126 at 12; AVZ Decl. ¶ 31.

The hours were particularly reasonable in light of the relentless litigation tactics pursued by Pham and the efforts required to defend against his continuous false statements and inclusion of Talkdesk's confidential information in the filings. Pham's entire case would not have continued but for his misrepresentation to the Court about his role as Talkdesk's former in-house counsel.

Moreover, Pham repeatedly included privileged or confidential Talkdesk information in his filings that required separate ex parte or sealing motion practice. *See, e.g.*, Dkt. Nos. 7 (Ex Parte Application to Seal Complaint), 7-17 (Geraghty Decl.), 12 (Order Granting Ex Parte Application), 81 (Joint Application to Seal ECF No. 80), 84 (Order Granting Joint Application).  And Pham filed spurious motions to disqualify Orrick and to strike an as-then unfiled Rule 11 motion, to which Orrick had to respond.  *See* Dkt Nos. 64, 87.  By filing its motion for sanctions early and receiving a case-dispositive order, Talkdesk ultimately saved the parties from months of fees that would have been incurred preparing expert reports and taking expert depositions.  The fees incurred by Talkdesk were necessary to bring the case to an early close.

Orrick follows strict time-keeping practices that require attorneys and paralegals billing to this case to bill in increments of one-tenth of an hour and proffer specific contemporaneous narratives detailing the activity for which they are billing.  *See* AVZ Decl. ¶¶ 10.  In support of this Request, Talkdesk provides a

spreadsheet containing excerpts from the billing records for Orrick's services

rendered from August 1, 2022 through and including June 22, 2023 in connection

with the defense of the lawsuit for which it seeks reimbursement, which includes

the billed increments and specific narratives (redacted to preserve privilege). *Id.*,

Ex. 1. As discussed above, these excerpts of the billing records reflect a discount

and time write-offs of ▮▮▮▮▮▮. *Id.* ¶ 17. In addition, Talkdesk is not seeking

reimbursement for time by other legal support staff, in-house legal staff, or for

billed time related to other motions and discovery in this case, which in total would

approximate $1,855,620. *Id.* ¶ 16. The detailed narratives that Talkdesk submits

demonstrate that the hours for which it seeks reimbursement were both necessary

and reasonable. This is particularly true in light of the need to investigate and

defend against Pham's repeated misrepresentations to the Court.

## IV.   **CONCLUSION**

This is an extraordinary case. Pham and Lobbin's misconduct has been

borderline cartoonish in its extremes and scope. Their near total lack of adherence

to professional norms and fiduciary obligations have caused substantial damage to

Talkdesk at a time when it is trying to grow and continue its success. Talkdesk

respectfully requests that the Court impose monetary sanctions against Pham and

Lobbin jointly and severally in the amount of $1,855,620 or whatever other amount

the Court deems proper.

Dated: July 25, 2023          ORRICK, HERRINGTON & SUTCLIFFE LLP

                              *Amy K. Van Zant*

                              By:_____
                                    Amy K. Van Zant
                                    Attorneys for Defendant
                                    Talkdesk, Inc.

1        The undersigned, counsel of record for Talkdesk, Inc., certifies that this brief

2 contains 5,773 words, which complies with the word limit of L.R. 11-6.1.

3 July 25, 2023                       ORRICK, HERRINGTON & SUTCLIFFE LLP

4

5                         By: _____

6                                 Amy K. Van Zant

7                            Attorneys for Talkdesk, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4162-1873-0568

- 1 -